UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUMBOLDT WHOLESALE, INC.,

    Plaintiff,

    v.

HUMBOLDT NATION DISTRIBUTION, LLC, *et al.*,

    Defendants.
_____/

No. C-11-4144 EMC

**ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIM**

**(Docket No. 58)**

    Plaintiff Humboldt Wholesale, Inc. ("HW") initiated this lawsuit against Defendants Humboldt Nation Distribution, LLC ("HND") and Humboldt Nutrients, LLC ("HN"), asserting claims for, *inter alia*, trademark infringement and unfair competition in violation of the Lanham Act and California Business & Professions Code § 17200. After the Court denied their motion to dismiss, Defendants answered the complaint and HN also asserted counterclaims. The parties later stipulated to the filing of a first amended answer and counterclaims. Currently pending before the Court is Defendants' motion to file a second amended answer and counterclaims. The new counterclaims that HN seeks to assert are as follows: (1) trademark infringement (based on the use of the trademark "Humboldt Nutrients"); (2) violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (4) violation of California Business & Professions Code § 17200; (5) intentional interference with prospective economic relations; and (6) negligent interference with prospective economic relations.

Having considered the parties' briefs and accompanying submissions, the Court finds this matter suitable for disposition without oral argument and **GRANTS** the motion for leave to amend.

## I.     FACTUAL & PROCEDURAL BACKGROUND

In the proposed second amended counterclaims, HN alleges as follows. "[HN] was formed in November 2006 for the purpose of manufacturing, marketing, and selling hydroponic goods, including but not limited to soils, additives, and fertilizers to retailers and distributors." Prop. SACC ¶ 6. HN owns four trademarks registered with the principal register of the U.S. Patent & Trademark Office ("USPTO"). *See id.* ¶ 6. In addition, HN has four applications pending with the USPTO seeking registration on the principal register. One of the applications seeks registration for the trademark "Humboldt Nutrients." *See id.* ¶ 8. The application, which was filed on June 7, 2011, recites June 1, 2007, as the date of first use in commerce.[1] *See id.* ¶ 8 & Ex. & (application).

According to HN, at or about the time it formed in 2006, it "registered the domain name 'humboldtnutrients.com' to advertise and promote its products." Prop. SACC ¶ 15. In June 2007, HW purchased and registered two domain names that were substantially similar to the humboldtnutrients.com domain name. Those names were as follows: humboltnutrients.com (*i.e.*, not using the letter "d") and humboldtnutrient.com (*i.e.*, using the singular and not plural). "When users looking for [HN's] website would enter one of these domain names, the user would automatically be routed to [HW's] website, where it advertises and promotes its goods." *Id.* HW used the two domain names until June 25, 2010, "at which point they were transferred to [HN]." *Id.* ¶ 17.

In its opposition brief, HW disputes the allegation that it purchased and registered the two domain names in June 2007. According to HW, the registrant of the two domain names was Stephen Snively. *See* Opp'n at 1. HW admits that Mr. Snively was a past employee. *See* Opp'n at 1-2. However, it is not clear whether Mr. Snively was an employee of HW at the time of registration in 2007. HW also admits that, on June 3 and 18, Mr. Snively transferred the two domain names to HW, who then transferred the names to HN on June 25, 2010. *See* Opp'n at 2, Exs. 1-2 (e-mails). However, as above, it is not clear whether, at the time of registration, Mr. Snively was an employee

---

[1] In its opposition brief, HW claims that the registration for "Humboldt Nutrients" is scheduled to be published on May 29, 2012. *See* Opp'n at 6.

2

1  of HW. Nowhere in its brief does HW address issues such as (1) the dates that Mr. Snively was
2  employed at HW; (2) what his title was at HW or what roles he played for the company; (3) whether
3  Mr. Shively registered the domain names acting as an agent for HW; (4) whether HW knew of the
4  registration of the domain names by Mr. Shively; and (5) whether the domain names, while
5  registered with Mr. Snively and/or HW, would lead an individual to HW's website.

## II. DISCUSSION

### A. Legal Standard

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides in relevant part that a "court should freely give leave [to] amend when justice so requires." Fed. R. Civ. P. 15(a). In general, "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Notably, undue delay by itself "is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). There must also be either (1) prejudice to the opposing party, (2) bad faith by the moving party, or (3) futility of the amendment. *See id.* (noting that "[w]e have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment").

In the instant case, HW opposes the proposed amendment by HN largely on the grounds of prejudice and futility.

### B. Prejudice

HW seems to argue that it would be prejudiced by the proposed amendment because its reputation and goodwill with the public and its customers would be harmed if HN were permitted to assert the claims for, *inter alia*, trademark infringement and unfair competition against it. *See* Opp'n at 4. HW, however, fails to cite to any authority supporting its theory that this is the kind of prejudice contemplated by Rule 15. The prejudice (generally) contemplated by Rule 15 is that causally related to disadvantage in litigation, not the legal consequences of the allegations should they be proven.

3

C.     Futility

     1.     Trademark Infringement

In its opposition brief, HW argues that the trademark infringement claim is futile because (1) "Humboldt Nutrients" is not a valid, protectable trademark and (2) even if it were, there is no evidence of infringement by HW as it did not register the domain names humboltnutrients.com and humboldtnutrient.com, nor did it use them for the brief time it had ownership of the names in June 2010.

          a.     Valid, Protectable Trademark

As a starting point, the Court notes that "federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). In the instant case, it is not clear what the registration status is of the mark "Humboldt Nutrients." As noted above, HN has an application pending with the USPTO on the mark. HW, in its opposition brief, states that registration is scheduled to be published on May 29, 2012. *See* Opp'n at 6.

Assuming that "Humboldt Nutrients" has not yet been registered, that does not mean that the mark is necessarily invalid and not protectable. A mark is valid and protectable so long as it is distinctive. *See Zobmondo*, 602 F.3d at 1113 (noting that "[d]istinctiveness measures 'the primary significance of the mark to the purchasing public'"); *see also Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (noting that "[f]ederal trademark registration is not a prerequisite for protection under the Lanham Act"). HW, however, contends that the mark is not distinctive because it is simply a descriptive mark and therefore undeserving of protection.

> Marks are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. Which category a mark belongs in is a question of fact. Suggestive, arbitrary, and fanciful marks are considered "inherently distinctive" and are automatically entitled to federal trademark protection because "their intrinsic nature serves to identify a particular source of a product." Generic marks are not eligible for trademark protection. Merely descriptive marks are somewhere in-between; although they are not inherently distinctive and are therefore not entitled to automatic trademark protection, a merely descriptive mark can become protectable if it has acquired

    distinctiveness "as used on or in connection with the applicant's goods
    in commerce." This acquired distinctiveness is referred to as
    "secondary meaning."

*Zobmondo*, 602 F.3d at 1113.

   Given the above standard, HW's argument is problematic. First, "[w]hich category a mark belongs in is a question of fact." *Id.* (also stating that "[t]he issue of trademark validity is considered 'an intensely factual issue'"). As the issue is a question of fact, the Court is reluctant to make a determination at the pleading stage that the mark "Humboldt Nutrients" is invalid and not protectable. Second, a descriptive mark is not automatically invalid and not protectable.[2] Rather, a descriptive mark can be valid and protectable so long as it has acquired distinctiveness. Here, the Court cannot say at this point that it is impossible for the mark "Humboldt Nutrients" to have acquired distinctiveness, particularly given HN's allegation that it has used the mark since June 2007. *See* Prop. SACC ¶ 8; *see also id.* ¶ 33 (alleging that "Humboldt Nutrients" has acquired secondary meaning). Given the possibility of acquired distinctiveness, the Court rejects HW's attempt to characterize the trademark infringement claim as futile.

   b. <u>Infringement</u>

   HW contends that, even if "Humboldt Nutrients" is a valid, protectable mark, the trademark infringement claim is still futile because there is no evidence that HW registered the two domain names at issue or ever used them. Given that the standard here is futility, the Court also rejects this argument. Even though HW may not have initially registered the two domain names, it appears that a prior employee did – *i.e.*, Mr. Snively. And notably, it is not clear exactly when Mr. Snively worked for HW. If Mr. Snively was an employee of HW at the time of registration, then arguably he registered the domain names as HW's agent. Even if Mr. Snively was not an employee of HW at the time of registration, that does not preclude the possibility that he was acting on behalf of HW,

---

  [2] To the extent HW relies on HN's allegations in the proposed amendment that the term "Humboldt" is geographically descriptive, that is beside the point. As the Court noted in its prior order denying HN's motion to dismiss HW's trademark infringement claim, a "singular focus on the word 'Humboldt'" is inappropriate; [t]he Court must consider [the] trademark[] as a whole in determining whether the trademark is valid, rather than invalidate [the] trademark[] simply because [it] include[s] a geographic term." Docket No. 28 (Order at 5).

5

particularly if – as alleged in the proposed amendment – the domain names were actually used to route individuals to HW's website.

As to whether HW ever used the domain names, it is plausible that the company did. At the very least, HW owned the domain names for a brief period in June 2010 – *i.e.*, after Mr. Snively transferred the domain names to HW and before HW transferred the names to HN. Furthermore, as noted above, HN has suggested that, even before the alleged transfer from Mr. Snively to HW, the use of the domain names would lead to HW's website. HW has not demonstrated that this allegation lacks factual basis as a matter of law.

### 2. Violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA")

Under the ACPA, "[c]ybersquatting is the bad faith registration of a domain name that is identical or confusingly similar to another's distinctive mark." *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509-10 (9th Cir. 2011). In its papers, HW argues that the ACPA claim asserted by HN is futile because (1) the "Humboldt Nutrients" mark is not distinctive, (2) HW did not register the domain names, and (3) there is no evidence that HW acted in bad faith.

The first two arguments are problematic for the same reasons stated above. As for the third argument, it too is problematic. An inference of bad faith can be based on" the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." 15 U.S.C. § 1125(d)(1)(B)(i)(II). Here, the domain names humboltnutrients.com and humboldtnutrient.com are basically identical to HN's name. HW claims still that it could not have acted in bad faith because, once Mr. Snively transferred the domain names to it, it promptly transferred the names to HN. But HW fails to address the fact that Mr. Snively could have initially registered the domain names as its agent. HW also fails to address the fact that, according to the proposed amendment, the domain names would route individuals to HW's website. *See Lahoti*, 586 F.3d at 1202 (noting that "[e]vidence of bad faith may arise well after registration of the domain name"); 15 U.S.C. § 1125(d)(1)(B)(i)(V) (indicating that a factor to consider in assessing bad faith is "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for

6

commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site").

### 3. Unfair Competition Under the Lanham Act

Title 15 U.S.C. § 1125(a) prohibits false designation of origin and false advertising. *See Summit Tech. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928-29 (C.D. Cal. 1996) (discussing elements of each claim). In its proposed amendment, HN alleges that HW violated § 1125(a) by "registering the domain names . . . and by causing internet users who enter the domain names to be automatically routed to [HW's] website, where [HW] advertises its goods, . . . [HW] passed [off] its goods as if they were associated with [HN], causing customer confusion as to the source of [HW's] and [HN's] goods." Prop. SACC ¶ 45. In its brief, HW argues that the § 1125(a) claim is futile because "[HN] provide[s] no factual support to support the notion that [HW] registered the two domain names at issue, or that [HW] used the two domain names at issue, or that the consuming public was confused." Opp'n at 8.

The registration and use arguments are rejected for reasons similar to those articulated above. As for the final argument regarding confusion, it is important to take into account that a likelihood of confusion is adequate; actual confusion is not required. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1228 (9th Cir. 2008) (asking "'whether customers are likely to be confused about the source or sponsorship of the products'"); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2002) (for false advertising claim, asking whether "the statement actually deceived or has the tendency to deceive a substantial segment of its audience"). Factors that a court may consider in determining whether a defendant's use of a mark is likely to confuse consumers include

> (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010). Here, a likelihood of confusion is plausible given the similarity between the mark

1 "Humboldt Nutrients" and the domain names. Moreover, the parties appear to offer the same good
2 and/or services. HN alleges that it "was formed in November 2006 for the purpose of
3 manufacturing, marketing, and selling hydroponic goods, including but not limited to soils,
4 additives, and fertilizers to retailers and distributors." Prop. SACC ¶ 6. HW alleges that, since
5 January 2006, it "has continuously provided hydroponics and soil gardening goods, including
6 growing medium, soil, fertilizers, soil additives and nutrients for soil." Compl. ¶ 7.

### 4. Violation of California Business & Professions Code § 17200

HW's contention that the § 17200 claim is futile is based, once again, on its claim that, "[a]t no time has [HW] registered or owned either of the domain names [*i.e.*, outside of the brief period in June 2010] . . . ." Opp'n at 8. For the reasons discussed above, the Court rejects this argument of futility.

### 5. Intentional and Negligent Interference with Prospective Economic Relations

Finally, HW claims that the claims for intentional and negligent interference with prospective economic relations are futile because HN has failed to plead all of the elements of the claims. HW charges that HN has failed to allege with "particularity" how HW's conduct constituted such interference. Opp'n at 10.

This futility argument, like those above, is without merit. First, these claims are not claims for fraud, so the particularity requirement of Federal Rule of Civil Procedure 9(b) is inapplicable. Under Federal Rule of Civil Procedure 8, HN need only make a plausible claim for relief. The allegations in the proposed amendment are sufficient to state a claim for relief. HN has alleged that it had existing and prospective business relationships with third-party distributors and retailers, that HW knew or should have known of those relationships, and that HW disrupted those relationships by registering the domain names and subsequently diverting Internet traffic from HN to HW through those names. *See generally* Prop. SACC ¶¶ 53-63; *see also Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008) (stating that, "to prove a claim for intentional interference with prospective economic advantage, a plaintiff has the burden of proving five elements: (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) an intentional act by the

defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party"; adding that "[t]he plaintiff must also prove that the interference was wrongful, independent of its interfering character").

### III. CONCLUSION

For the foregoing reasons, the Court grants HN's motion. The main question is whether the new claims are futile, and HW has failed to make an adequate showing that they are.

This order disposes of Docket No. 58.

IT IS SO ORDERED.

Dated: July 2, 2012

_____
EDWARD M. CHEN
United States District Judge